IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA            PLAINTIFF

V.          Criminal No. 2:12-cr-20010-PKH-MEF-1
          Civil No. 2:12-cv-02262-PKH

ROGER BATES            DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed September 19, 2016. (ECF No. 72). An evidentiary hearing on Defendant's motion to vacate was held on August 16, 2019. (ECF No. 110). The matter is ready for Report and Recommendation.

**I. Background**

On March 6, 2012, Defendant, Roger Bates ("Bates"), was named in an Indictment charging him with six counts of sexual exploitation of a minor, in violation of 18 U.S.C. §§ 2251(a) and (e), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (ECF No. 1). Bates was arrested on March 20, 2012, and he appeared for arraignment before the Hon. James R. Marschewski, United States Magistrate Judge, on March 23, 2012, at which time Bates entered a not guilty plea to each count of the Indictment. (ECF No. 5). Bates was represented by retained counsel, Earnest "Ernie" Witt ("Witt"). (*Id.*).

Bates sought and received three continuances of the trial date. (ECF No's. 10, 11, 12, and related Text Only Orders). On July 11, 2012, a Superseding Indictment was issued charging Bates with six counts of sexual exploitation of a minor, in violation of 18 U.S.C. §§ 2251(a) and (e), and two counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and

1

(b)(2).  (ECF No. 13).  Bates was arraigned on the Superseding Indictment on July 19, 2012, at which time he entered a not guilty plea to all charges.  (ECF No. 17).

On August 13, 2012, Bates appeared before the Hon. P. K. Holmes, III, Chief United States District Judge, for a change of plea hearing.  (ECF No. 20).  Pursuant to a written Plea Agreement, Bates pleaded guilty to Counts One and Five of the Indictment charging him with sexual exploitation of a minor, in violation of 18 U.S.C. §§ 2251(a) and (e).  (ECF No. 20; ECF No. 21, ¶ 1).  The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report.  (ECF No. 20).

An initial Presentence Investigation Report ("PSR") was prepared on October 22, 2012. (ECF No. 27, p. 1).  Bates' conduct in Count One resulted in a base offense level of 32.  (ECF No. 27, ¶ 60).  A four-level enhancement was assessed because the offense involved a minor who had not attained the age of 12 years.  (*Id*., ¶ 61).  A two-level enhancement was assessed because the minor was in Bates' custody, care, or supervisory control at the time of the offense.  (*Id*., ¶ 62). Bates' conduct in Count Five resulted in a base offense level of 32.  (*Id*., ¶ 67).  A four-level enhancement was assessed because the offense involved a minor who had not attained the age of 12 years.  (*Id*., ¶ 68).  A two-level enhancement was assessed because the offense involved the commission of a sexual act or sexual contact.  (*Id*., ¶ 69).  Another two-level enhancement was assessed because the minor was in Bates' custody, care, or supervisory control at the time of the offense. (*Id*., ¶ 70).  After considering Bates' relevant conduct as to victims "AG" and "MB," and taking into account the multiple count adjustment pursuant to U.S.S.G. § 3D1.4, the greater of the adjusted offense levels was determined to be 40, and the combined adjusted offense level was determined to be 44.  (*Id*., ¶¶ 75-81, 82-87, 88-91).  As Bates had engaged in a pattern of activity

involving prohibited sexual conduct, the offense level was increased to 49 pursuant to U.S.S.G. § 4B1.5(b)(1). (*Id.*, ¶ 92). No reduction for acceptance of responsibility was reported (*Id.*, ¶ 93), so Bates' total offense level was determined to be 49. (*Id.*, ¶ 94).

Bates was found to have zero criminal history points, placing him in criminal history category I. (*Id.*, ¶ 99).

The statutory minimum term of imprisonment for each count of conviction is 15 years, with a statutory maximum term of imprisonment of 30 years on each count, resulting in a total minimum term of imprisonment of 30 years and a total maximum term of imprisonment of 60 years. (*Id.*, ¶ 121). Based on a total offense level of 49[1] and a criminal history category of I, the advisory guideline range for imprisonment was Life; however, pursuant to § 5G1.2(d), where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.[2] (*Id.*, ¶ 121).

On November 1, 2012, the United States advised that it had one objection to the PSR relating to paragraphs 135 and 136. (ECF No. 27, p. 21). Specifically, the United States submitted that restitution should be ordered for the costs of both present and future physical, mental, and psychological care and therapy of the minors depicted in the counts of conviction, as well as any other restitution covered under the mandatory restitution provision of Chapter 110; that Bates owns five acres of land in London, Arkansas worth approximately $15,000.00; and, the Government contended this is a reasonable amount of restitution to be paid in this case. (*Id.*). In response, the

---

[1] A total offense level of more than 43 is to be treated as an offense level of 43. (ECF No. 27, ¶ 122).

[2] Therefore, Bates' guideline range for imprisonment was 720 months. (ECF No. 27, ¶ 121).

3

Probation Officer revised the PSR to reflect the applicability of restitution pursuant to 18 U.S.C. § 2259 and U.S.S.G. § 5E1.1, and to report that the victims had not submitted documentation regarding specific loss amounts incurred as a result of the offenses. (*Id*.).

On November 2, 2012, Bates advised that he had one objection to the PSR relating to Paragraphs 27 and 36. (ECF No. 27, p. 21). Bates denied that he gave KM a razor and made her shave her legs while she stayed overnight with him, and he denied that he admitted to taking photos of KM while she sat naked in the bathtub. (*Id*.). Noting that the reported information was derived from discovery material provided during the presentence investigation, the Probation Officer made no changes to the PSR. (*Id*., p. 22).

Sentencing was held on December 18, 2012. (ECF No. 25). The Court made inquiry that Bates was satisfied with his counsel; the PSR was reviewed; counsel and Bates were afforded the opportunity to make statements; and, the Court imposed a guidelines sentence of 360 months imprisonment on Counts One and Five to run consecutively, lifetime supervised release to run concurrently, no fine, restitution of $4,000.00, and a total of $200.00 in special assessments. (ECF No. 25). Judgment was entered by the Court on December 20, 2012. (ECF No. 28). No direct appeal from the Judgment was taken.

On December 24, 2013, Bates filed his first *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (ECF No. 44). Bates alleged one ground for relief: ineffective assistance of counsel for failing to file a notice of appeal after having been instructed to do so. (*Id*., p. 4). Bates argued that he was "deprived of his statutory right to appellate review of his conviction and sentence because he was abandoned by his retained counsel." (ECF No. 45, p. 4). A Report and Recommendation by Judge Marschewski was

submitted on August 22, 2014, in which it was noted that the Government agreed not to contest Bates' contentions regarding his directive to trial counsel to appeal the sentence imposed, and that an order should be entered re-sentencing Bates for purposes of allowing him to pursue an appeal. (ECF No. 58). An Order adopting the Magistrate Judge's Report and Recommendation was entered by the Court on September 10, 2014, and Bates' motion to vacate was granted. (ECF No. 59). The Judgment (ECF No. 28) entered on December 20, 2012 was vacated, and the Court reaffirmed the original sentence and directed the Clerk of the Court to enter an Amended Judgment imposing the same terms as the original Judgment in order to allow the time for appeal to begin again. (ECF No. 59). The Amended Judgment was entered on September 10, 2014. (ECF No. 60). Bates then timely filed a notice of appeal on September 18, 2014. (ECF No. 61).

On appeal, Bates argued that his sentence was substantively unreasonable. (ECF No. 67-2, p. 2). Finding no abuse of discretion in imposing the 720-month sentence, and no sentencing disparity[3], the Court of Appeals for the Eighth Circuit denied Bates' appeal and affirmed his sentence on June 18, 2015. (ECF No. 67-2). The Mandate was issued on July 9, 2015. (ECF No. 67).

---

[3] Citing *United States v. Baughman*, 597 F. App'x 899, 899-900 (8th Cir. 2015) (per curiam) (upholding the statutory 720-month sentence for a two count conviction of child-pornography production, rejecting the defendant's claim that his crime was not as serious as other child pornography offenses).

On January 4, 2016, Bates filed a *pro se* Motion to Compel, seeking an order compelling his trial counsel to provide "the requested discoverable material so that the petitioner may file his § 2255 motion in a timely manner." (ECF No. 68). The Motion to Compel was denied by Order entered on April 6, 2016 (ECF No. 71), the Court stating:

> "This case, including Bates's petition filed pursuant to 28 U.S.C. § 2255, has been resolved. There is no pending case or controversy. If Bates seeks to file a successive petition and is allowed to proceed, he can seek formal discovery at that point in accordance with any applicable rules."

(ECF No. 71, p. 2).

Bates did not seek permission from the Court of Appeals for the Eighth Circuit to file a second or successive petition under 28 U.S.C. § 2255.

On September 19, 2016, and without authorization from the Eighth Circuit, Bates filed his second *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (ECF No. 72). The United States filed its response on October 12, 2016. (ECF No. 81). Bates filed a reply on December 19, 2016. (ECF No. 85). On May 12, 2017, the undersigned filed a Report and Recommendation recommending dismissal of Bates' motion as a second or successive motion filed without first obtaining certification from the Eighth Circuit Court of Appeals. (ECF No. 86). Bates filed an objection to the Report and Recommendation on May 30, 2017. (ECF No. 87). On September 20, 2017, the Court entered an Order dismissing without prejudice Bates' second motion to vacate. (ECF No. 88).

Bates timely filed a notice of appeal on November 17, 2017. (ECF No. 90). Based upon the government's concession that Bates' second motion to vacate was not an unauthorized second or successive motion, on March 22, 2019 the Eighth Circuit Court of Appeals reversed the order of this Court denying the motion without prejudice and remanding the case for resolution of Bates'

6

§ 2255 claims and other applicable defenses on the merits.  (ECF No. 99-1).

Bates then filed an Amended Reply in support of his motion to vacate on April 5, 2019. (ECF No. 102).  An Order appointing counsel to represent Bates and setting an evidentiary hearing was entered on April 9, 2019.  (ECF No. 103).

An evidentiary hearing on Bates' motion to vacate was held on August 16, 2019.  (ECF No. 110).

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  A thorough review of Bates' motion, the files and records of this case, and the evidence presented at the evidentiary hearing, conclusively shows that Bates is not entitled to relief, and the undersigned recommends the denial and dismissal of Bates' § 2255 motion with prejudice.

### A. Bates' § 2255 Grounds for Relief

Bates states four grounds for federal habeas relief in his § 2255 motion: (1) ineffective

assistance of counsel in that his trial counsel was "incompetent, unprofessional, lacking in loyalty and otherwise ineffective due to complete failure to investigate the case and file any relevant motions," and that counsel "tricked Petitioner into pleading guilty"; (2) ineffective assistance of counsel for failure to request a *Franks* hearing after being requested to seek one; (3) prosecutorial misconduct due to the AUSA's failure "to move to dismiss the indictment that had previously been dismissed in State Court which has prejudiced the Petitioner's case, and violated his Constitutional rights"; and, (4) that his 60-year sentence is substantively unreasonable and unconstitutional. (ECF No. 72).

Upon the Eighth Circuit's remand of this case for resolution of Bates' § 2255 claims and other applicable defenses on the merits (ECF No. 99-1), Bates sought and obtained leave of court (ECF No's. 100, 101) to file an amended reply in support of his § 2255 motion. In his Amended Reply, Bates "agrees with the United States that his prosecutorial misconduct argument is without merit … and does not merit federal habeas relief." (ECF No. 102, p. 6). Further, Bates now agrees his claim that his sentence is unreasonable was raised on appeal and may not be re-litigated in a § 2255 proceeding. (*Id*.). Bates has thus abandoned his third and fourth grounds for relief, and the Court need not address the merits of those claims. That leaves for resolution Bates' first two grounds for relief, both of which involve alleged ineffective assistance of counsel.

### B. Standards Applicable to Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*.

at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

### C. Validity and Effect of Bates' Guilty Pleas

Bates entered guilty pleas to the two offenses of conviction. One who enters a plea of guilty waives his right to request relief under 28 U.S.C. § 2255 except for those issues related to jurisdiction only. *See Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989) ("In pleading guilty, a defendant waives all challenges to the prosecution except those related to jurisdiction," including claims regarding search and seizure, privilege against self-incrimination, and failure to disclose favorable evidence), *cert. denied*, 493 U.S. 869 (1989). When a guilty plea is entered by

the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)). In *Tollett*, the Supreme Court observed:

". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*[4].

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id.* at 267.

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927)). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral

---

[4] **Error! Main Document Only.** *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.").

10

proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

Bates was represented by experienced retained counsel, Ernie Witt, throughout the criminal proceedings leading to and including the change of plea hearing. Witt represented Bates at his arraignment on March 23, 2012, and Bates was informed of his rights, the charges brought against him, and the maximum possible penalties (including a term of imprisonment of *not less than* 15 years and not more than 30 years on Counts One through Six). (ECF No's. 1, 2, 5). The case was scheduled for trial on May 8, 2012. (ECF No's. 5, 7). Witt subsequently sought and obtained three continuances in order to prepare for trial. (ECF No's. 10-12). On July 19, 2012, Witt appeared with Bates for his arraignment on a Superseding Indictment. (ECF No's. 13, 17). Again, Bates was informed of his rights, the charges brought against him, and the maximum possible penalties (including a term of imprisonment of *not less than* 15 years and not more than 30 years on Counts One through Six). (ECF No's. 13, 14, 17). The case was scheduled for trial on August 13, 2012. (ECF No. 17).

Witt explained at the evidentiary hearing that the government's position regarding a plea agreement never changed, and the AUSA handling the case consistently demanded that Bates plead guilty to two counts of production of child pornography. Witt testified that one of the minor female victims was to be a witness at trial, there were the video images, and there was the identification of Bates by the minor female victim. The government also filed notice of its intent to introduce evidence of similar crimes (i.e., that Bates took sexually explicit photographs of two other minor victims on two separate occasions) pursuant to Rules 404(b) and 414 of the Federal

11

Rules of Evidence. (ECF No. 18). Witt said he explained the evidence to Bates, that Witt characterized the government's case as being "extremely strong," and he told Bates that. Witt also explained the possible penalties to Bates, including a mandatory minimum sentence of 15 years imprisonment up to 30 years imprisonment. Witt testified that he was "100% sure" he would not have told Bates that he could get less than 15 years imprisonment.

Four days prior to the trial date, the Court scheduled a pre-trial conference set to begin at 8:30 a.m. the morning of trial. At that point, the United States' Notice of Intention to Introduce Evidence of Similar Crimes (ECF No. 18) and its Motion for Minor Victim's Testimony to be Taken via 2-Way Closed Circuit Television (ECF No. 19) were pending. Witt testified that no defense witnesses were subpoenaed for trial because "there were none." Witt's trial strategy, he explained, was to press the government on its burden of proof. During the pre-trial conference the morning of trial, Bates asked to see some of the government's exhibits, and Witt testified that he obtained some of them from the AUSA and showed them to Bates. At that point, according to Witt's testimony, Bates became concerned about being exposed to all the government's evidence against him.

Witt received a proposed written Plea Agreement from the AUSA prosecuting the case. Witt carefully reviewed the entire proposed Plea Agreement with Bates, including the admission of factual basis in support of the guilty pleas, before obtaining Bates' signature on it. (ECF No. 21, ¶ 30(a)). The written Plea Agreement informed Bates of the counts of conviction, being Counts 1 and 5 of the Indictment, and the counts to be dismissed. (*Id.*, ¶ 1). Bates acknowledged that he fully discussed with his counsel the facts of the case and the elements of the crimes to which he was pleading guilty; he agreed that he had committed each of the elements of the crimes to which he was pleading guilty; and, he admitted the factual basis for the pleas. (*Id.*, ¶ 2). The Plea

Agreement advised Bates of his constitutional and statutory rights, including the right to persist in his plea of not guilty. (*Id*., ¶ 4).

By signing the Plea Agreement, Bates acknowledged that he read the agreement and had carefully reviewed every part of it with his counsel; that he fully understood the Plea Agreement and was not under the influence of anything that could impede his ability to fully understand it; that no promises, agreements, understandings, or conditions had been made or entered into in connection with the decision to plead guilty except those set forth in the Plea Agreement; that he was satisfied with the legal services provided by his defense counsel in connection with the Plea Agreement and matters related to it; that he entered into the Plea Agreement freely, voluntarily, and without reservation; and, that his desire to enter a plea of guilty was not the result of any threats or coercion. (*Id*., ¶ 29).

During the change of plea hearing on August 13, 2012, Bates was sworn on oath and examined about the offenses. (ECF No. 57). The Court asked Bates about his age and level of education, whether Bates was under the influence of alcohol or drugs, whether he understood what was happening in the proceeding, and whether Witt had explained the consequences of the proceedings and nature of the charges. (*Id*., pp. 3-4). Bates confirmed that his willingness to change his plea was the result of discussions that his attorney had with the government; that he read the Plea Agreement and had an opportunity to discuss it with Witt before he signed it; that the Plea Agreement represented his full understanding of the agreement that he and Witt made with the government; and, that no one had made a promise or assurance to him to get him to sign the Plea Agreement other than those contained in the Agreement. (*Id*., p. 5). He also confirmed that he was pleading guilty of his own free will because he was guilty and that no one had forced him to plead guilty. (*Id*., p. 6). He expressed his understanding of the possible consequences of a

guilty plea, including the maximum sentence of thirty (30) years and the minimum sentence of fifteen (15) years on each of the two counts he pled guilty to. He also understood that his sentence could be different than what Witt estimated it to be. (*Id.*, pp. 6-8). The AUSA recited the facts that could be proven by the government should the case go to trial, and Bates acknowledged his understanding of those facts and he admitted that the government could prove those facts at trial. (*Id.*, pp. 12-14). Bates then pleaded guilty to Counts One and Five of the Superseding Indictment. (*Id.*, pp. 15-16). Finally, Witt asked Bates to confirm for the record that Witt did not, in order to convince him to take the plea agreement, suggest any penalty range that could be imposed upon him, which Bates confirmed. (*Id.*, p. 17).

The record thus shows that Bates voluntarily and intelligently entered guilty pleas to the two offenses of conviction, and that there was an independent basis in fact to support Bates' guilty pleas.

### D. Failure to Investigate and File Pre-Trial Motions

Bates now claims that Witt was ineffective because he failed to investigate the case and file pre-trial motions, including a motion to suppress evidence and a request for a *Franks*[5] hearing. (ECF No. 72, pp. 4-5).

As discussed above, Bates voluntarily and intelligently entered valid guilty pleas to the offenses of conviction in conformity with both constitutional guidelines and the requirements of Fed. R. Crim. P. 11. Pursuant to *Tollett* and *Bass*, his guilty pleas represent a "break in the chain of events which ha[ve] preceded [them]," and any non-jurisdictional claims that Bates was deprived of a constitutional right prior to his guilty pleas are barred, except a claim that his plea was not voluntarily and intelligently entered into because advice from counsel was outside the

---

5 *Franks v. Delaware*, 438 U.S. 154 (1978).

"range of competence" of criminal defense attorneys. Neither Witt's failure to file a pre-trial motion to suppress and request a *Franks* hearing, nor any failure by Witt to advise Bates of his ability to file any other pre-trial motions, will alone meet the standard under *Tollett* and *Bass*. Thus, Bates fails to demonstrate that Witt's alleged pre-trial conduct rendered his guilty pleas involuntary.

Bates alleges Witt should have requested a *Franks* hearing because Monica, a former friend and houseguest of Bates, delivered to someone in Bikers Against Child Abuse ("BACA") photos purporting to be Bates and an underage girl, and that disclosure led to law enforcement's search of Bates' residence. (ECF No. 72-1, p. 11). Bates cites *United States v. Figueroa* 750 F.2d 232 (2d Cir. 1984) and *United States v. Southard*, 700 F.2d 1 (1st Cir. 1983)[6] in support of his claim that Witt was deficient in failing to seek a *Franks* hearing. (*Id.*). The courts in both cases, however, upheld the district courts' decisions to deny motions for *Franks* hearings and did not touch upon ineffectiveness of counsel. *Figueroa*, 750 F.2d at 237; *Southard*, 700 F.2d at 12.

Although Bates offered to sign an affidavit swearing to the facts he alleges warranted a *Franks* hearing (ECF No. 72-1, p. 11), his statement alone would not have been enough to warrant a *Franks* hearing, and he does not claim that he offered any corroborating evidence as required. *Franks*, 438 U.S. at 171 (holding that a *Franks* hearing will be denied without corroborating affidavits or sworn or otherwise reliable statements of witnesses). Further, Bates alleges only that Monica's statements were false, not that law enforcement knew of any falsity and deliberately asserted false statements in their affidavit in support of a search warrant or did so with reckless disregard as required. (ECF No. 72-1). *Franks*, 438 U.S. at 171-72 ("Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose

---

6 Although Bates cited in his motion to "United States v. Southerd 700 F.3d [1st Cir. 1983]", this Court believes that he meant to cite to *United States v. Southard*, as cited here. (ECF No. 72-1, p. 11).

impeachment is permitted today is only that of the affiant, *not of any nongovernmental informant*.") (emphasis added). Concerned that frivolous challenges could lead to unnecessary pretrial delays, the Court in *Franks* adopted a "substantial preliminary showing" requirement and stressed the need for a "sensible threshold" before a hearing would be required. *Franks*, 438 U.S. at 155-56; *Figueroa*, 750 F.2d at 237. Here, Bates has failed to demonstrate the basic facts on which a *Franks* hearing may be warranted, and Witt could not have been deficient in failing to request a *Franks* hearing (or in failing to discuss the possibility of doing so with Bates). It cannot be ineffective assistance not to raise a meritless argument. *Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994). Moreover, Bates does not allege any other basis for his claim that Witt's performance was deficient because he failed to investigate and file pretrial motions. (ECF No. 72-1; ECF No. 102).

Bates' conclusory allegations fall well short of establishing that Witt's advice during plea negotiations "fell below an objective standard of reasonableness," and that there exists "a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011). Instead, the record reveals that probable cause supported the issuance of the search warrant; that Witt's decision not to file a motion to suppress evidence and request a *Franks* hearing was reasonable; and, that upon considering the government's evidence against him, Bates made a voluntarily and intelligent choice among the alternative courses of action open to him.

Accordingly, Bates has not shown deficient performance by Witt to support his claim of ineffective assistance of counsel for failing to investigate the case and file pretrial motions. Since Bates has not shown that Witt's performance was deficient regarding this issue, there is no need to address the second *Strickland* prong of prejudice. *Walker*, 324 F.3d at 1040.

### E. Misrepresentation of Sentencing Exposure

Bates' second ground for relief is based on his allegation that Witt told him multiple times that, if he pled guilty, he would receive a sentence between time-served and five years' incarceration, but, if he went to trial, he would get a life sentence. (ECF No. 72-1, pp. 15-18; ECF No. 102). In support of this claim, Bates submitted affidavits from his daughter and sister, both stating they witnessed Witt telling Bates multiple times, "if you take the plea, you will either get a [sic] TIME SERVED OR AT THE MOST 5 YEARS." (ECF No. 72-2). Notably, neither of these affiants appeared at the evidentiary hearing to provide testimony on Bates' behalf. Upon careful consideration of the evidence of record, the undersigned does not find Bates' allegation credible.

Bates represented in his written Plea Agreement and at his change of plea hearing that he understood the range of punishment for the two counts of conviction was between a mandatory minimum of 15 years imprisonment and up to 30 years imprisonment; that Witt had gone over this range of punishment with him; that the Plea Agreement did not promise a specific sentence; that nothing in the Plea Agreement bound the Court to hand down any specific sentence; and, that he did not rely on any promises or assurances other than those in the Plea Agreement. (ECF No. 21, ¶¶ 10, 18, 25(c), 29; ECF No. 57, pp. 5-8). Bates specifically affirmed his understanding that "the sentence could be different than what your attorney estimates it to be." (ECF No. 57, p. 8). Further, near the end of the change of plea hearing, Witt specifically asked Bates, "to acknowledge that I have not, in order to get him to make this plea, suggested any penalty range that can be imposed on him," and Bates answered in the affirmative. (ECF No. 57, p. 17).

The only evidence in support of Bates' claim are self-serving statements from Bates and two immediate family members. As previously noted, neither of these family members appeared at the evidentiary hearing to provide sworn testimony in support of Bates' claim.

17

Further, one would reasonably expect, if Bates' claim was true, that he would have made the claim in his first § 2255 proceeding filed on December 24, 2013. (ECF No. 44). The nature of this allegation is such that Bates would have been aware of Witt's alleged trickery at the time of sentencing. Any defendant who believed when he pled guilty that he was facing no more than five years imprisonment, and who was subsequently sentenced to 60 years imprisonment, would surely assert such a claim in his first habeas proceeding, if not immediately at the time sentence was imposed. Instead, Bates raised only his claim that an appeal had not been pursued when he instructed Witt to file one. (ECF No. 44, p. 4). When that relief was granted (ECF No. 59), Bates then pursued on direct appeal his argument that the Court's sentence was substantively unreasonable. (ECF No. 67-2). Only after that appeal resulted in the affirmance of Bates' sentences did Bates raise the claim now presented. This delay further raises questions of the credibility of his claim. *See Nguyen*, 114 F.3d at 703 (the credibility of defendant's allegations was questionable when the nature of the allegations showed that defendant was aware of the basis upon which he challenged his plea, but defendant waited 32 months after his plea and 24 months after his sentencing to file).

Guilty pleas in open court carry a strong presumption of verity, and a defendant has a heavy burden to overcome those admissions and show that the guilty plea was involuntary. *See Blackledge*, 431 U.S. at 72-74; *Nguyen*, 114 F.3d at 703. Bates has not met that heavy burden in this case. Further, Bates' claim in his Amended Reply (ECF No. 102) that the government waived this argument is erroneous. In its response to Bates' § 2255 motion, the government argued that Bates' allegation was "simply not credible" because it was contradicted by the Plea Agreement, Bates' testimony at the change of plea hearing, and his failure to allege this claim in his first § 2255 motion. (ECF No. 81). The government did not waive this argument.

Accordingly, Bates has failed to demonstrate that his guilty pleas to the two offenses of conviction were prompted by Witt's alleged promise that Bates' sentence would be no more than five years imprisonment.

### III. No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has made a substantial showing of the denial of a constitutional right. A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473 (2000).

For the reasons discussed above, I conclude that Bates has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### IV. Conclusion

It is recommended that Bates' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 72) be **DISMISSED with PREJUDICE**.

It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of October 2019.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE